C. S. WHITCOMB, Adm'r, *v*. JAMES S. REID, Guardian.

1. ESTATE OF DECEDENTS: PROPERTY EXEMPT FROM EXECUTION.—The children of a person dying intestate and leaving no widow, are entitled under the Act of 20th October, 1852, to the property of their father which was exempt by law from execution in his lifetime.

2. EXECUTION: PROPERTY EXEMPT FROM.—Dentistry is not a "trade," nor is a dentist a "mechanic;" and hence the instruments used by a dentist in the practice of his calling, are not exempt by law from execution, under the denomination of "tools of a mechanic necessary for carrying on his trade."

APPEAL from the Probate Court of Madison county. Hon. J. M. Simmons, judge.

*Lawson* and *Lucket*, for appellant.

*Davis* and *Hill*, for appellee,
Cited Session Acts of 1852, p. 66; Hutch. Code, 902, § 23; 8 S. & M. 520; *Edwards* v. *M'Gee*, 27 Miss. R. 92.

HANDY, J., delivered the opinion of the court.

The appellee, as the guardian of the minor children of Young W. Lewis, deceased, filed this petition in the Probate Court against the appellant, his administrator, praying the appointment of com-

missioners, to set apart to the wards so much of the estate of their deceased father as was exempt from execution.

It appears that the mother of the children died before their father, who left no widow at his death, and that he was a practising dentist, and died intestate.

On the hearing, the court appointed commissioners to set apart certain articles of personal property, including a set of dentists' instruments belonging to the deceased: and from this order, the administrator appealed.

The first question presented is, whether the property of the deceased, which is exempt by law from execution, descends to the children where the father dies leaving no widow.

The Act of October 20th, 1852, provides, that "all property real, personal or mixed, at present exempt from execution by virtue of any laws now in force, upon the death of the husband, dying intestate, (shall) descend in like manner as other property descends, according to the laws now in force, to the widow and children during widowhood, and afterwards to all the children alike, free from all contracts and liabilities of said decedent, or his widow during her life." Ib. p. 66.

It has been held by this court, that the right to one year's provision out of the estate of the deceased, given by the Act of 1839, to " the widow and children," is not dependent, as to the children, upon the life of the mother. *Edwards* v. *M'Gee*, 27 Miss. 92. And the Act of 1852, above cited, still more clearly confers the substantive right embraced in it upon the children. The provision is, that the property referred to shall descend "to the widow and children during widowhood, and afterwards to all children alike;" from which it is plain, that all such property goes to the children upon the death or marriage of the widow. Both the terms of the act, and the reason upon which it is founded, show that the protection of the rights of the children, independently of those of the widow, was the subject of special consideration. For if the necessities of the children, with the care and protection of the mother were the objects of special protection, it is manifest that they must have been much more the subjects of protection when deprived of their mother. And we think that they are entitled to the benefit

of the provisions of the statute, though the father die leaving no widow.

The second question presented is, whether the instruments of a dentist are embraced in the language of the statute exempting from execution, the " tools of a mechanic necessary for carrying on his trade."

We do not think that this provision can be extended to the description of instruments in question. A dentist cannot be properly denominated a " mechanic." It is true that the practice of his art requires the use of instruments for manual operation, and that much of it consists in manual operation; but it also involves a knowledge of the physiology of the teeth, which cannot be acquired but by a proper course of study; and this is taught by learned treatises upon the subject, and as a distinct, though limited, department of the medical art, in institutions established for the purpose. It requires both science and skill; and if such persons could be included in the denomination of " mechanics," because their pursuit required the use of mechanical instruments and skill in manual operation, the same reason would include general surgeons under the same denomination; because the practice of their profession depends, in a great degree, upon similar instruments and operative skill.

Nor could such a pursuit properly be said to be a "trade." That term is defined to denote, "the business or occupation which a person has learned, and which he carries on for procuring subsistence, or for profit—particularly a mechanical employment, distinguished from the liberal arts and learned professions, and from agriculture."—Webster's Dictionary. It is manifest that a pursuit, requiring a correct knowledge of the anatomy and physiology of a part of the human body, as well as mechanical skill in the use of the necessary instruments, could not be properly denominated a "trade."

The order of the Probate Court, so far as it respects the dental instruments, is therefore reversed, and the cause remanded for further proceedings, in setting apart the other property embraced in the order.