**In re David A. SIEGEL, Debtor.**

**Bankruptcy No. 97–27911–L.**

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Oct. 24, 1997.

Russell W. Savory, Memphis, TN, for Debtor.

Steven N. Douglass, Memphis, TN, for trustee.

### MEMORANDUM OPINION AND ORDER ON TRUSTEE'S OBJECTION TO CLAIMED EXEMPTIONS

JENNIE D. LATTA, Bankruptcy Judge.

Before the court is the "Objection to Claimed Exemptions" filed by George W. Stevenson, Chapter 7 trustee. The Trustee objects to two exemptions claimed by the debtor: (1) an exemption pursuant to TENN. CODE ANN. § 26–2–106 of certain accounts receivable generated in the debtor's law practice; and (2) an exemption pursuant to TENN.CODE ANN. § 26–2–111(4) of certain law books, software, computer, monitor, printer, computer hutch, swivel chair, desk and credenza. A hearing on the motion was conducted on September 18 1997. For the reasons given below, the court concludes that the Trustee's objection with respect to the debtor's accounts receivable should be sustained, but the Trustee's objection with respect to the debtor's computer and related equipment and furniture should be overruled. This memorandum shall constitute findings of fact and conclusions of law in accordance with FED. R. BANKR.P. 7052. This is a core proceeding. 28 U.S.C. § 157(b)(2)(B).

### I. FINDINGS OF FACT

The debtor is a practicing attorney in Shelby County, Tennessee. The debtor maintains a solo practice and has no employees. In the course of his practice, the debtor generates accounts receivable arising from legal services provided by the debtor to his clients. As of the date of the filing of his voluntary petition, June 3, 1997, the debtor had accounts receivable in the amount of $5,002.50. The debtor claims as exempt sev-

enty-five percent of the value of the accounts, or $3,751.88.

The debtor maintains an office for the practice of law at 99 N. Third Street, Memphis, Tennessee. At that location are certain law books, software, a computer, monitor and printer, a computer hitch, a swivel chair, desk and credenza. The debtor testified that these items are used exclusively in his law practice and that he would not be able to practice law without them. The debtor stated that he does all of his own word-processing, and that all the books and records of his practice are maintained on his computer. The debtor described his computer as "essentially my lifeline." The debtor testified that he has nowhere else to put his computer, monitor and printer except on his computer hutch. The debtor believes that these items of personal property have a value of $1,850.00.

At the hearing, the attorney for the Trustee argued that the debtor cannot exempt any portion of his accounts receivable under TENN.CODE ANN. § 26–2–106 because that section is a wage garnishment statute that does not apply to accounts receivable in bankruptcy.

The Trustee conceded that the debtor's law books constitute "tools of the trade" for purposes of Tenn.Code Ann. § 26–2–111(4), but argued that the other items of personal property claimed by the debtor to be "tools of the trade" were not uniquely suited for use in the debtor's law practice, and thus were not subject to exemption.

## II. DISCUSSION

### A. May the Debtor Exempt Accounts Receivable Pursuant to Section 26–2–106?

The debtor claims an exemption in seventy-five percent of the value of his accounts receivable as of the filing of his petition pursuant to TENN.CODE ANN. § 26–2–106. That section provides in pertinent part:

**26–2–106. Maximum amount of disposable earnings exempt from garnishment—Garnishment costs.**—(a) The maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment may not exceed:

(1) Twenty-five percent (25%) of his disposable earnings for that week, or

(2) The amount by which his disposable earnings for that week exceeds thirty (30) times the federal minimum hourly wage at the time the earnings for any pay period become due and payable, whichever is less.

(b) In the case of earnings for any pay period other than a week, an equivalent amount shall be in effect.

TENN.CODE ANN. § 26–2–106.

The debtor argues that the foregoing statute creates an exemption for seventy-five percent of the debtor's accounts receivable. The Trustee, relying upon *In re Lawrence*, 205 B.R. 115 (Bankr.E.D.Tenn.1997), argues that the referenced statute is a garnishment statute, not an exemption statute, and does not create an exemption recognizable in bankruptcy.

In *Lawrence*, a Chapter 7 trustee objected to a debtor-podiatrist's claimed exemption of seventy-five percent of his accounts receivable under TENN CODE ANN. § 26–2–106. In a lengthy and well-reasoned opinion, Bankruptcy Judge John C. Cook concluded that the Tennessee statute limits the amount of disposable earnings subject to garnishment, but does not create an exemption. Judge Cook based his decision upon the following factors:

1. The Tennessee statute does not permanently sequester funds traceable to wages from the reach of creditors, but only limits the amount of disposable earnings that are subject to garnishment in the hands of third parties.

2. Tennessee has no statute specifically exempting wages from execution, although it does exempt other streams of income such as state pensions, both before receipt and in the hands of the pensioner.

3. Tennessee does have a general personal property exemption that would permit a debtor to exempt up to $4,000 in unpaid wages, TENN.CODE ANN. § 26–2–102.

The Court is persuaded by the reasoning of Judge Cook TENN.CODE ANN. § 26–2–106 does not create an exemption for wages or earnings in the hands of third parties or in the hands of the debtor. "The essence of an exemption is the sequestration of property from creditors, usually by placing it completely beyond the reach of judicial process for as long as it maintains its exempt form and character." *Lawrence,* 205 B.R. at 124. The Tennessee garnishment statute does not accomplish this. If the debtor wishes to exempt some portion of his accounts receivable, he must rely upon the general personal property exemption, TENN. CODE ANN. § 26–2–102.

### B. Are the Debtor's Computer and Related Equipment and Furniture "Tools of the Trade"?

The Debtor seeks to exempt his computer, software, monitor, printer, computer hutch, swivel chair, desk and credenza as "tools of the trade" pursuant to TENN.CODE ANN. § 26–2–111(4). That section provides:

> **26–2–111. Additional exemptions—Certain benefit payments—Awards—Tools of trade—Health care aids.**—In addition to property exempt under § 26–2–102, the following shall be exempt from seizure or attachment in the hands or possession of any person who is a bona fide citizen permanently residing in Tennessee:
>
> > (4) The debtor's aggregate interest, not to exceed one thousand nine hundred dollars ($1,900) in value in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

TENN CODE ANN. § 26–2–111(4).[1]

The debtor concedes that there are no Tennessee cases specifically holding that a computer and related equipment and furniture may be exempted as tools of the trade under the quoted provision. In support of his claimed exemption, the Debtor relies upon *In re Duchesne,* 21 B.R. 390 (N.D.N.Y. 1982); *In re Page,* 131 B.R. 530 (Bankr. D.R.I.1991); and *Terry v. McDaniel,* 103 Tenn. 415, 53 S.W. 732 (1899).

In *Duchesne,* the United States District Court for the Northern District of New York considered whether a debtor would be permitted to exempt as tools of the trade personal property consisting of an air compressor and tank; propane gas tank and gauges; portable car wash; vacuum cleaner; portable pump and equipment; various electrical, air and hand tools; portable fans; fluorescent light fixtures; electrical cords; and various materials, including sandpaper and paint. The debtor was the proprietor of an automobile body repair business. The debtor pledged the listed items as security for a business loan. In the bankruptcy court, the secured creditor sought and received relief from the automatic stay to permit it to foreclose its security interest in the listed property. The bankruptcy court determined that the exemption provided by the Bankruptcy Code for tools of the trade did not extend to implements or tools given as security for a business loan. *Duchesne,* 21 B.R. at 391.

The district court reversed, permitting the debtor to avoid the lien of the secured creditor to the extent that it impaired his exemption. *Id.* at 391; *see* 11 U.S.C. § 522(f). The court reasoned as follows:

> It was clearly the intention of Congress that a bankrupt be permitted to make a fresh start after bankruptcy by the use of the tools or implements necessary to enable him to pursue and make a living at his trade. The debtor here is a craftsman, skilled in the repair of automobile bodies. The implements and tool of his trade consist of such implements and things as are used or employed in his work. The Bankruptcy Code makes no distinction between tools and implements of a self-employed

---

[1]. Tennessee elected to "opt out" of the federal bankruptcy exemptions found at 11 U.S.C. § 522(b). The federal exemption for tools of trade is as follows:

> (D) The following property may be exempted under subsection (b)(1) of this section:
> (6) The debtor's aggregate interest, not to exceed $ 1,500 in value, in any implements,

professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor.

11 U.S.C. § 522(d)(6). The analysis in this case does not depend on any distinction between the Tennessee statute and the federal statute.

debtor engaged in a particular trade and those of an employee debtor who works in the same trade.

*Id.* (citations omitted).

In *Page,* the debtor sought to exempt as a tool of his trade a piano. The debtor described his occupation as "spiritual lecturer," and related how he and several other musicians gave paid lectures concerning the spiritual meanings of songs. The debtor testified that he could not deliver these lectures effectively without a piano. Further, the debtor testified that although he had resumed giving lyric lectures regularly only after the filing of his petition, he had been in the music business for twenty years. The debtor failed to list a trade or occupation in his bankruptcy schedules. *Page,* 131 B.R. at 530. The trustee argued that the debtor's use of the piano was purely recreational, or in the alternative, that the debtor's failure to list a trade or occupation in his schedules was fatal to his claim of exemption. The trustee failed to present any proof tending to show that the piano was not necessary to the debtor's occupation.

The bankruptcy court concluded that the debtor's failure to list his occupation in his bankruptcy schedules did not "per se" defeat his claim to a "tool of the trade exemption," and further that the exemption would be allowed because the piano was "reasonably necessary" to the debtor's trade. *Id.* at 532.

In *Terry v. McDaniel,* the Tennessee Supreme Court considered whether a barber chair and looking glass were tools of the trade exempt from execution. Terry claimed that, as head of a household, he was entitled to exempt the chair and looking glass. In the alternative, he claimed that he was "a barber by occupation, and that he allow[ed] his customers to sit in th[e] chair and look into th[e] glass while he proceed[ed] to make gentlemen of them, and these, with his razor, [were] the tools of his trade or occupation, and exempt to him as a mechanic." *Terry,* 103 Tenn. at 416, 53 S.W. 732. The opinion recounts the rather lively arguments of the parties concerning the use of the chair and the size of the looking glass. Noting that "exemption law must be liberally construed to preserve the exemption," the court held

that the barber chair and looking glass fell within the letter of the law exempting to a head of household a chair and looking glass. *Id.* at 420, 53 S.W. 732. The court further held that, at the request of the plaintiff, he would be "classed as a mechanic and laborer, as well as orator and news agent, and [was] therefore within the spirit of the law, and [was] entitled to the exemption [for tools of the trade]." *Id.*

In opposition to the claimed exemption in this case, the Trustee relies upon *In re Goldberg,* 59 B.R. 201 (Bankr.N.D.Okla.1986). In that case, the debtor-physician sought to exempt as tools of his trade a computer and printer. The debtor testified that he maintained a computer consulting business in addition to his medical practice and that he had taught computer courses at a local junior college. The debtor's computer business was conducted through a corporation of which the debtor was a minority shareholder. The particular computer and printer that the debtor sought to exempt were located at the debtor's home, however. The corporation owned another computer used in its business. The debtor's gross income from the computer consulting business was $4,500 and $8,100 respectively in the two tax years immediately preceding the filing of his bankruptcy petition.

Quoting from a prior decision of the Bankruptcy Court for the Northern District of Oklahoma, the bankruptcy court set forth its rule regarding the tools of trade exemption as follows:

> "Determination of the qualification of property for exemption and lien avoidance under 11 U.S.C. § 522(f) must be made on a case by case basis with close scrutiny of the particular facts and circumstances of each case."

*Goldberg,* 59 B.R. at 207 (quoting *Ragsdale v. Northeastern Production Credit Association (In re Ragsdale),* Bankr.No. 83–00378 (Bankr.N.D.Okla.1986)). Looking at the facts of the case before it, the bankruptcy court concluded that the debtor's only trade for purposes of the exemption was his medical practice. *Goldberg,* 59 B.R. at 208. Because the computer and printer were not

used in the debtor's medical practice, the claimed exemption was disallowed.

The decision in *Goldberg* has been criticized in a subsequent bankruptcy court decision from the Northern District of Oklahoma, *In re Carson,* 184 B.R. 587 (Bankr.N.D.Okla. 1995). In *Carson,* the bankruptcy court held that computer equipment owned by a debtor-lawyer qualified for the Oklahoma tools of the trade exemption. In explaining its departure from the *Goldberg* case, "decided nearly a decade ago," the court said:

> The Court finds over the years the sophistication, as well as the competitive environment of legal services in the community of Tulsa, Oklahoma, has made the use of computer equipment, both for word processing and accounting functions, to be an indispensable part of the practice of law. While it may be true that in 1986 a computer was not an essential part of the practice of medicine in this community, the Court finds and concludes that simple personal computers are of immense value and are truly necessary to the efficient and modern practice of law in this community.

*Carson,* 184 B.R. at 589.

The Trustee also relies upon *In re Bannon,* 116 B.R. 227 (Bankr.D.Idaho 1990), in which the bankruptcy court did not permit a debtor who operated a video tape rental business to exempt 400 video cassette tapes as tools of the trade. That decision was based upon the Oregon exemption statute and a prior bankruptcy opinion which construed the statute as follows:

> "The word tool is defined to be some simple instrument used by the hand, and the object of the legislature evidently was to exempt articles of small value and of frequent and daily use by a poor mechanic upon whose manual occupation of these tools his family depended for subsistence. It was never intended that the debtor should be protected in carrying on an extensive trade with a large capital, even in tools, while his creditor was suffering for the money, justly due him." [quoting with approval *Kirksey v. Rowe,* 114 Ga. 893, 40 S.E. 990 (1902).]

*Bannon* 116 B.R. at 228 quoting *In re Lindsay,* 29 B.R. 25, 26 (Bankr.D.Or.1983). The

*Lindsay* court declined to find that a vehicle was a tool of the trade because it was not "'uniquely suited for and principally used in connection with a principal business activity.'" *Bannon,* 116 B.R. at 228 quoting *Lindsay,* 29 B.R. at 26. Based upon this interpretation, the Oregon bankruptcy court concluded that the Oregon tools of the trade exemption would not reach the video tapes owned by the debtor.

Based upon the decision of the Tennessee Supreme Court in *Terry v. McDaniel,* the Court concludes that the Tennessee courts would not read the Tennessee tools of the trade exemption as narrowly as the *Bannon* and *Lindsay* courts. The looking glass in *Terry,* was not said to be "uniquely suited" for use in a barber shop, although it was used principally in connection with that business.

Other than *Terry v. McDaniel,* the Court has discovered no Tennessee cases construing the tools of the trade exemption. Thus, the Court must make its own determination of how the Tennessee courts would interpret the exemption. The rules concerning the tools of trade exemption that may be gleaned from the previously cited cases are as follows:

1. Exemption laws are to be liberally construed in order to preserve the exemption.

2. The determination of whether personal property is a tool of the trade must be made on a case by case basis.

3. The debtor must demonstrate that he practiced a particular trade or occupation at the time of the filing of his bankruptcy petition or that he had engaged in the particular trade or occupation in the past and intended to resume it.

4. The debtor must demonstrate that the property that he seeks to exempt is reasonably necessary to the performance of his chosen trade or occupation.

Applying these rules to the instant case the Court concludes that the debtor's claim of exemption with respect to his computer and related equipment and furniture

should be allowed. The debtor was engaged in the occupation of lawyer both before and after the filing of his bankruptcy petition. The computer and related equipment and furniture are used by him as a lawyer and only minimally for personal uses. The debtor uses the computer to produce legal documents. His legal forms, correspondence, and the books and records of his business are all maintained on his computer. The debtor has satisfactorily demonstrated that the computer and related equipment and furniture are reasonably necessary to the performance of his occupation as lawyer.

The Court's decision in this case is in accord with other bankruptcy cases finding a computer to be a tool of the trade for purposes of exemption. *See, e.g., In re Cottingham,* 1996 WL 288393 (Bankr.W.D.Tenn. 1996) (Tennessee law; debtor-caterer); *In re Carson,* 184 B.R. 587 (Bankr.N.D.Okla.1995) (Oklahoma law; debtor-lawyer); *In re Neal,* 140 B.R. 634 (Bankr.W.D.Texas 1992) (Texas law; debtor-sole proprietor of computer-aided drafting and scanning service); *In re Knight,* 75 B.R. 838 (Bankr.S.D.Iowa 1987) (Iowa law; debtor-insurance salesman); *but see, First National Bank of Pinellas v. Guard (In re Guard),* 26 B.R. 2 (Bankr. M.D.Fla.1982) (federal law; debtor-lawyer; "trade" does not include the practice of law; a typewriter, desk and chair are not "tools").

### CONCLUSION

The Court concludes that the debtor may not exempt any portion of his accounts receivable pursuant to TENN.CODE ANN. § 26–2–102, but the debtor has carried his burden of establishing that he is entitled to exempt as tools of his trade his computer, software, monitor, printer, computer hutch, swivel chair, desk and credenza.

Accordingly, it is **ORDERED** that:

1.  The Trustee's objection to the debtor's claimed exemption of accounts receivable pursuant to TENN.CODE ANN § 26–2–102 is **SUSTAINED** and the exemption is disallowed; and

2.  The Trustee's objection to the debtor's claimed exemption of his computer, software, monitor, printer, computer hutch, swivel chair, desk and credenza

as tools of his trade is **OVERRULED,** and the exemption is allowed.